IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HEATHER WINDSOR,**

    **Petitioner,**

**v.**                                           **Civil Action No. 1:18CV53**
                                             **Criminal Action No. 1:17CR21**
                                                         **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

Pending before the Court is the pro se motion filed by the petitioner, Heather Windsor ("Windsor"), to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 1).[1] Long after Windsor filed her § 2255 motion, she moved for leave to amend her motion to add additional claims (Dkt. No. 11). For the reasons that follow, the Court **DENIES IN PART** Windsor's § 2255 motion, **DENIES** her motion for leave to amend, and **SCHEDULES** an evidentiary hearing concerning two of Windsor's claims of ineffective assistance of counsel.

### I. BACKGROUND

On June 26, 2017, Windsor pleaded guilty to one count of making a false statement during purchase of a firearm, in violation

---

[1] All docket numbers, unless otherwise noted, refer to Civil Action No. 1:18CV53.

**WINDSOR V. UNITED STATES** 1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

of 18 U.S.C. § 922(a)(6) (Case No. 1:17CR21, Dkt. No. 51). As part of her plea agreement, Windsor knowingly and voluntarily waived her rights to appeal the sentence imposed and to collaterally attack her "conviction and/or the sentence or the manner in which it was determined." Id. at 13:20-25, 14:1-10, 36:3-21. Nothing in these waivers, however, prevented Windsor from perfecting her legal remedies to appeal or collaterally attack her conviction or sentence based on claims of ineffective assistance of counsel or prosecutorial misconduct. Id. at 14:11-17. On October 31, 2017, the Court sentenced her to 57 months of incarceration followed by 3 years of supervised release (Id., Dkt. No. 52).

Although Windsor did not appeal her conviction or sentence, on March 13, 2018, she filed this § 2255 motion, which she later re-filed on the court-approved form (Dkt. No. 1, 5). After the Government responded to Windsor's motion (Dkt. No. 8), she sought leave to amend her motion on October 30, 2019, to add additional claims (Dkt. No. 11). The Government opposed her motion (Dkt. No. 14). This matter is now ripe for disposition.

## II. APPLICABLE LAW

28 U.S.C. § 2255(a) permits federal prisoners who are in custody to assert the right to be released if "the sentence was

**WINDSOR V. UNITED STATES**                                                                   **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

imposed in violation of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such sentence," or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A petitioner bears the burden of proving any of these grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### III. DISCUSSION

**A.**     **§ 2255 Motion**

    **1.**     **Claims Based on Counsel's Conduct During Representation and at Sentencing**

Windsor contends her retained counsel was constitutionally ineffective because he failed to (1) file Windsor's application to drug court; (2) object to the PSR guideline provisions; (3) review documents with her; (4) communicate during representation; and (5) prepare for sentencing (Dkt. No. 1). Windsor further alleges that her retained counsel made unprofessional comments to her during his representation, and had an inappropriate social relationship with her prior to being retained to represent her in this case. Id.

To succeed on an ineffective assistance of counsel claim, a "petitioner must show, by a preponderance of the evidence, that

3

**WINDSOR V. UNITED STATES** 1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

(1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle v. United States, 269 F. Supp. 3d. 716, 726 (E.D. Va. 2017) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)); see also Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (holding that "the two-part [Strickland standard] applies to challenges to guilty pleas based on ineffective assistance of counsel.").

To satisfy the first prong, the petitioner must show that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687-88. But "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

To satisfy the second prong, in the context of a guilty plea

4

**WINDSOR V. UNITED STATES**                                              **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

a petitioner "must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "The [p]etitioner must 'satisfy both prongs, and a failure of proof on either prong ends the matter.'" Beyle, 269 F. Supp.3d at 726 (quoting United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004)).

Here, Windsor has failed to satisfy either Strickland prong. First, she has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Indeed, Windsor's assertions about her counsel's deficient performance are contradicted by the record. Absent clear and convincing evidence to the contrary, a defendant is bound by the representations she makes under oath during a plea colloquy or at sentencing. See United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005); Blackledge v. Allison, 431 U.S. 63, 74-75, 97 S.Ct. 1621, 1629-30 (1977).

Windsor neither argues nor suggests that the representations she made during her plea or sentencing hearings were untruthful or involuntary, and she is therefore rightly bound by her sworn statements. Transcripts from her plea and sentencing hearings

**WINDSOR V. UNITED STATES**                                                               **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

confirm that her attorney reviewed the plea agreement with her before she signed it, and moved, albeit unsuccessfully, for a continuance of her sentencing so that she could apply to drug court while incarcerated (Case No. 1:17CR21, Dkt. No. 51 at 17:25-18:13, Dkt. No. 52 at 12:2-13:10). At sentencing, Windsor also acknowledged her satisfaction with her attorney's representation and that she had no concerns about their communication (Dkt. No. 52 at 41:1-10).

The Court gave Windsor an opportunity to raise any concerns about her attorney's performance at sentencing, including his failure to bring a complete electronic record of the Presentence Report ("PSR") to the hearing. Nonetheless, even after her attorney admitted that he had misplaced his electronic copy of the PSR, Windsor confirmed that she was prepared to go forward with her sentencing. Id. at 13:11-14.

Windsor's contention that her attorney should have objected to the guideline range as calculated in the PSR likewise lacks merit. See Strickland, 466 U.S. at 689 (noting that a fair assessment of counsel's conduct requires an evaluation from counsel's perspective at the time); see also United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999) (holding that "[a]n attorney's failure to raise a

WINDSOR V. UNITED STATES                                              1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

meritless argument [ ] cannot form the basis of a successful ineffective assistance of counsel claim[.]"). Windsor stipulated to a Base Offense Level of 20 in her plea agreement and acknowledged her understanding that she was bound by this stipulation (Case No. 1:17CR21, Dkt. No. 51 at 19:4-13). Further, the facts in the PSR supported a four-level increase for the specific offense characteristic that she possessed or transferred a firearm with the "knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." (Id., Dkt. No. 38 at 6); see also U.S.S.G. § 2K2.1(b)(6)(B). Windsor's past convictions also supported that she had a Criminal History Category of II (Id., Dkt. No. 38 at 10). The Court correctly calculated her guideline range according to these parameters, and any objection raised by her counsel would have been meritless. Therefore, Windsor's contentions cannot form the basis of a successful ineffective assistance of counsel claim.

Even if her attorney's performance was deficient, Windsor has failed to allege—let alone establish—that there is a "reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Therefore, Windsor has failed to demonstrate

**WINDSOR V. UNITED STATES**                                                   **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

prejudice under the second Strickland prong. The Court accordingly **DENIES IN PART** her § 2255 motion related to her claims of ineffective assistance of counsel other than as discussed below.

    **2.   Claims Based on Inappropriate Comments**

Windsor claims that her attorney's performance was deficient due to inappropriate comments he made both prior to and during their attorney-client relationship. Specifically, Windsor alleges that she met the attorney at Red's Angels Gentleman's Club several years prior to his representation in this case (Dkt. No. 5 at 6). Windsor contends she performed "exotic services" for the attorney, who "offered [her] a lump sum of cash to get pregnant with and give birth to his child." Id. Finally, Windsor alleges that the attorney made sexual and other inappropriate comments during her case, including asking about her girlfriend instead of focusing on her impending sentencing. Id. at 8.

The Government argues that Windsor's sworn statements at the change of plea hearing and at the sentencing hearing established her complete satisfaction with her attorney's services (Dkt. No. 8 at 10). And, although the alleged prior relationship was well known to her, Windsor confirmed that she had no evidence of his ineffective assistance. Id.

**WINDSOR V. UNITED STATES**  1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

That Windsor failed to raise these allegations at sentencing despite being asked about her satisfaction with her attorney's representation is extremely troubling (Case No. 1:17CR21, Dkt. No. 52 at 41:7-10). If true, they should have been brought to the Court's attention long before a post-conviction challenge to her sentence. Notably, when Windsor retained counsel to represent her, she well aware of their prior relationship and any alleged sexual comments made years before their attorney-client relationship began.

At this point, the record concerning these bare allegations consists solely of Windsor's *ipse dixit*. Far more than her mere accusation is necessary in order for Windsor to meet her "heavy burden" to overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983); Strickland v. Washington, 466 U.S. 668, 689 (1984). Some of her allegations precede her retention of counsel, while others concern inappropriate, unprofessional comments allegedly made during their professional relationship. Despite Windsor's failure to bring this matter to the Court's attention during her case, and make a record about their prior relationship and how his inappropriate comments

9

**WINDSOR V. UNITED STATES** 1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

may have prejudiced her, based on her pro se status, the Court finds that some leeway is warranted. It therefore will conduct an evidentiary hearing to allow her to support her allegations with appropriate testimony and other evidence.

**B.   Motion for Leave to Amend**

On October 30, 2019, the Court received a "Motion for Leave to Amend 28 U.S.C. § 2255 Motion to Add Amendment 752 Claim" from Windsor (Dkt. No. 11), and directed the Government to respond (Dkt. No. 12). This motion is fully briefed and ripe for review.

The Antiterrorism and Effective Death Penalty Act of 1996 restricted the jurisdiction of the district courts to hear second or successive applications for federal habeas corpus relief by prisoners attacking the validity of their convictions and sentences by establishing a "gatekeeping mechanism." Felker v. Turpin, 518 U.S. 651, 657 (1996). Specifically, a district court may not hear a second or successive motion under § 2255 unless it is certified by a three-judge panel of the appropriate circuit court. 28 U.S.C. §§ 2244(3)(B), 2255(h). The three-judge panel must certify that the second or successive motion contains

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty

10

**WINDSOR V. UNITED STATES**                                           **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

> of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable.

28 U.S.C. § 2255(h).

Moreover, the United States Court of Appeals for the Fourth Circuit has instructed that inmates may not avoid the bar on successive collateral attacks on their convictions and sentences by inventive labeling. See United States v. Winestock, 340 F.3d 200, 206 (4th Cir. 2003). A motion pursuant to 28 U.S.C. § 2255 "provides the primary means of collateral attack on a federal sentence." Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (quoting Cox v. Warden, Fed. Det. Ctr., 911 F.2d 1111, 1113 (5th Cir. 1990)). "Any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255[(a)], is a motion under § 2255, no matter what title the prisoner plasters on the cover." Melton v. United States, 359 F.3d 866, 857 (7th Cir. 2004) (citing Ramunno v. United States, 264 F.3d 723 (7th Cir 2001)). In other words, a "motion is a second or successive [habeas] petition if it in substance or effect asserts or reasserts a federal basis for relief from the petitioner's underlying conviction." United States v. McCalister, 453 Fed. App'x 776, 778 (10th Cir. 2011) (alteration in original) (quoting Spitznas v.

**WINDSOR V. UNITED STATES**  1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

Boone, 464 F.3d 1213, 1215 (10th Cir. 2006)).

Windsor contends that, pursuant to Amendments 752 and 805 to the United States Sentencing Guidelines, her sentence is excessive. On careful review, however, it is evident that this motion constitutes another attack by Windsor on her sentence that must be treated as a second or successive § 2255 motion. Notably, the Court has not received authorization from the Fourth Circuit to file a such a motion by Windsor. See generally, Docket.

Critically, Windsor also knowingly and voluntarily waived her right to collaterally attack her "conviction and/or the sentence or the manner in which it was determined," which she now attempts to do in this motion. The waiver of the right to collateral attack a sentence is valid as long as it is knowing and voluntary. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Even if not construed as a second or successive § 2255 motion, and even if Windsor had not waived her right to collaterally attack her sentence, her proposed amendment is futile. Her arguments concern inapposite amendments to the United States Sentencing Guidelines and general allegations that her sentence is unfair. Critically, Windsor's arguments ignore both her stipulation in her plea agreement concerning her Base Offense Level and also her

12

Case 1:18-cv-00053-IMK Document 16 Filed 02/10/21 Page 13 of 19 PageID #: 209

**WINDSOR V. UNITED STATES** 1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

failure to object to the Court's calculation of the applicable guidelines at her sentencing hearing.

Because Windsor failed to object at sentencing to the Court's calculation of her Base and Adjusted Offense Levels and her Criminal History Category, she must satisfy the requirements of the two part "cause and actual prejudice test" in United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584 (1982), to obtain relief. The federal government's strong interest in respecting the finality of its criminal judgments demands that a collateral challenge to a conviction not take the place of an appeal. Id. at 164-65, 102 S.Ct. 1584. For this reason, a petitioner raising an objection for the first time on collateral attack "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. at 168, 102 S.Ct. 1584. To establish cause, Windsor must show that some objective factor external to the defense prevented her attorney from raising the issue. See Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986); Turner v. Jabe, 58 F.3d 924, 92 (4th Cir. 1995).

The cause-and-prejudice standard is significantly more strict than the standard of review on direct appeal. Frady, 456 U.S. at

**WINDSOR V. UNITED STATES** 1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

166, 102 S.Ct. 1584. This standard also applies to unappealed guilty pleas. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). If, at the time of sentencing or direct appeal, Windsor was able to make the objection she now raises, interests of finality demand that a mere unawareness of the legal basis for her claim not constitute cause for her procedural default. See Engle v. Isaac, 456 U.S. 107, 133-34, 102 S.Ct. 1558 (1982).

The Court calculated Windsor's Base Offense Level as a 20. See U.S.S.G. § 2K2.1 ("an offense involving false statements involving a semi-automatic firearm capable of accepting a high capacity magazine has a base offense level of 20."). Pursuant to the terms of her plea agreement, Windsor and the Government stipulated that, pursuant to Guideline Section 2K2.1(a)(4)(B)(i)(I), the offense involved a semi-automatic firearm capable of accepting a large capacity magazine (Case No. 1:17CR21, Dkt. No. 24 at 3). At her plea hearing, Windsor confirmed that she understood she was bound by that stipulation. (Id., Dkt. No. 51 at 19:4-13). The Court then increased Windsor's Base Offense Level by 4, after applying the specific offense characteristic that she possessed or transferred a firearm with the "knowledge, intent, or reason to believe that it would be used or possessed in connection

**WINDSOR V. UNITED STATES**                                                                                    **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

with another felony offense." (Case No. 1:17CR21, Dkt. No. 52 at 23:5-9); see also U.S.S.G. § 2K2.1(b)(6)(B). This increase resulted in an Adjusted Offense Level of 24 (Id., Dkt. No. 38 at 7).

The facts in the PSR established that, after Windsor had purchased a pistol, a drum-style magazine, an AR-style magazine, and fifty rounds of ammunition, she "placed the purchased items on the rear seat next to the male passenger . . . and walked around the rear of the vehicle to enter the front passenger door." Id. at 6. The male passenger was a convicted felon. Id. Windsor never objected to this factual recitation in the PSR or to the four-level increase applied by the Court. Id.

Windsor's criminal history was significant for "battery on a health care worker" and "petit larceny, joyriding/unlawful taking of a vehicle", which occurred on different days but which resulted in a single forty-two day jail sentence.[2] (Id., Dkt. No. 38 at 10-11). These convictions established her Criminal History as a

---

[2] Sentences for misdemeanor and petty offenses are counted except if they are for offenses specifically listed in § 4A1.2(c) or similar to the listed offenses. See U.S.S.G. § 4A1.2(c)(1) ("Careless or reckless driving, contempt or court, disorderly conduct or disturbing the peace," etc.). None of these exceptions apply here. Moreover, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2).

**WINDSOR V. UNITED STATES**                                                  **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

Category II (Id., Dkt. No. 52 at 23:23-25, 24:1-7).

At sentencing, Windsor confirmed that she understood the Court's calculation of both her Base Offense Level and also her Criminal History Category. Id. at 24:13. Her only objection was to the Court's denial of any reduction in the calculation for acceptance of responsibility. Id. at 25:12-15.

Now, for the first time in a post-conviction, collateral challenge, Windsor argues that her sentence was calculated incorrectly. Indeed, the crimes Windsor describes as "petty offenses" in her criminal history are serious ones, involving battery and theft of a vehicle. Instead of establishing mitigating circumstances, Windsor's arguments attempt to minimize her past criminal conduct. Moreover, Windsor cannot establish that her counsel was unable to object to these calculations. Rather, the record is clear that her counsel had this information available to him and that he explained the PSR, both in person and by telephone, to Windsor prior to sentencing (Case No. 1:17cr21, Dkt. No. 52 at 10:15-25, 11:1-:5). Therefore, Windsor has failed to demonstrate any cause for her procedural default in failing[3] to object.

---

[3] Additionally, as discussed supra, Windsor's counsel's objection to the Court's calculation of her sentence based on the stipulation in her plea agreement and the PSR would have been

**WINDSOR V. UNITED STATES**                                                  **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

Next, Windsor argues that Amendment 752 to the United States Sentencing Guidelines "states that the maximum offense for her charge is 18." She also argues that the 2018 Amendment to U.S.S.G. § 4A1.3 ensures that petty offenses cannot accumulate to increase a criminal history category.

It is notable that Amendment 752 amended the commentary to U.S.S.G. § 2J1.1 to specify that, in a case involving a violation of 18 U.S.C. § 228,[4] U.S.S.G. §2B1.1(b)(8)(C) does not apply. See Amendment 752 to U.S.S.G. § 2J1.1 (Nov. 1, 2011). Secondly, the 2018 Amendment to U.S.S.G. § 4A1.3(a)(2) ("Amendment 805") addresses the treatment of tribal court convictions and "federal sentencing issues related to offenses committed in Indian country." See Amendment 805 (Nov. 1, 2018). Windsor's arguments thus are unavailing.

As well, her arguments that her sentence is unfair because the Court did not consider the § 3553(a) factors and that her sentence is longer than sentences imposed in similar cases likewise fail. At sentencing, the Court carefully reviewed the § 3553(a) sentencing

---

without merit.

[4] 18 U.S.C. § 228 concerns failure to pay legal child support obligations and is not relevant to this case.

**WINDSOR V. UNITED STATES**                                                     **1:18CV53**

**MEMORANDUM OPINION AND ORDER DENYING IN PART
§ 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE
TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

factors. See, e.g., Case No. 1:17CR21, Dkt. 52 at 34 (" The countervailing point . . . is this current offense isn't [a misdemeanor] and this offense involves a dangerous weapon . . . Your behavior, particularly most recently, predicts recidivist behavior.") Additionally, Windsor was sentenced at the low end of her guideline range, which was calculated, in part, using her stipulation to a Base Offense Level of 20. Thus, because the Court correctly calculated Windsor's guideline range, sentenced her to a term of imprisonment within the range, and provided a reasoned analysis of the sentencing factors, Windsor's arguments regarding the unfairness of her sentence are futile. Accordingly, the Court **DENIES** Windsor's motion for leave to amend her § 2255 motion.

### IV. CONCLUSION

For the reasons discussed, the Court 1) **DENIES IN PART** Windsor's § 2255 motion (Dkt. No. 1); 2) **DENIES** her motion for leave to amend (Dkt. No. 11); and 3) **SCHEDULES** an evidentiary hearing for **Wednesday, March 3, 2021,** at **3:30 P.M.** regarding the inappropriate comments allegedly made by Windsor's counsel.

Due to the ongoing COVID-19 pandemic, Windsor shall appear by videoconference from the facility where she is currently incarcerated. All necessary videoconference arrangements shall be

**WINDSOR V. UNITED STATES** 1:18CV53

**MEMORANDUM OPINION AND ORDER DENYING IN PART § 2255 MOTION [DKT. NO. 1], DENYING MOTION FOR LEAVE TO AMEND [DKT. NO. 11], AND SCHEDULING EVIDENTIARY HEARING**

made by counsel for the Government. Windsor's former counsel, Phillip S. Isner, Esq. and counsel for the Government shall appear in person for this proceeding in the Magistrate Judge Courtroom, 3rd Floor, at the Clarksburg, West Virginia point of holding court.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit a copy of this Order to Windsor by certified mail, return receipt requested; to Phillip S. Isner, Esq. by certified mail to Isner Law Office, 44 Randolph Ave, Elkins, WV 26241, return receipt requested; and to counsel of record by electronic means.

DATED: February 10, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE